UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE: SEARS HOLDINGS CORPORATION, *et al.*,

        Debtors.

---

NINA GREENE and GERALD GREENE,

        Appellants,

  -against-

TRANSFORM HOLDCO, LLC, TRANSFORM SR PROTECTION, LLC, and TRANSFORM SR LLC,

        Appellees.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/27/2022

No. 21 Civ. 5437 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    This appeal arises from the Chapter 11 bankruptcy case of Debtors Sears Holdings Corporation and its affiliates in the Southern District of New York, Case No. 18-23538 (RDD). Appellants Nina and Gerald Greene are the class representatives of two certified classes in a 2015 class action against Debtors in the United States District Court for the Northern District of Illinois (the "Class Action."). The Class Action has been stayed since the commencement of the Chapter 11 bankruptcy case.

    During the course of this bankruptcy case, the Bankruptcy Court oversaw the extensive negotiations between Debtors and Appellees Transform Holdco, LLC, Transform SR Protection, LLC, and Transform SR, LLC, regarding Debtors' sale of substantially all of their assets to Appellees. In February 2019, Debtors and Appellees closed this sale transaction after the Bankruptcy Court approved the Asset Purchase Agreement ("APA") between them.

In December 2019, Appellants moved for relief from the automatic stay under 11 U.S.C. § 362(d) to continue prosecuting the Class Action, but with Appellees substituted as the defendants. Appellants argued that the APA provides for Appellees' assumption of certain liabilities from Debtors, including the claims asserted against them in the Class Action. On May 27, 2021, the Bankruptcy Court denied Appellants' motion. Appellants appealed on June 9, 2021.

For the following reasons, the Bankruptcy Court's Order is AFFIRMED in its entirety.

## BACKGROUND

The following facts are derived from the uncontested facts before the Bankruptcy Court and the record on appeal.

### Appellants' Class Action Against Debtors

On March 25, 2015, Appellants commenced a class action against Debtors in the United States District Court for the Northern District of Illinois. *See Greene v. Sears Protection Company, et al.*, Case No. 1:15-cv-02546. In the Class Action, Appellants allege that Debtors sold Master Protection Agreements ("MPAs") to repair or replace covered home appliances that they had no intention of performing, for which Appellants assert claims for breach of contract, unjust enrichment, and violations of the consumer protection laws of Illinois and Pennsylvania. Following motion practice and the completion of discovery, the court in the Class Action certified two classes under Federal Rule of Civil Procedure 23, naming Appellants as class representatives for both.

### Debtors' Chapter 11 Bankruptcy Case

On October 15, 2018, Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. As a result, the Appellants' Class Action was automatically stayed under 11 U.S.C. § 362(a). Appellants, on behalf of the two certified classes and their own, filed Proofs of Claim against Debtors in April 2019.

**The Sale Transaction**

Upon commencing the Chapter 11 bankruptcy case, Debtors began to solicit bids to sell some or all of their assets under 11 U.S.C. § 363. After intensive negotiations and a competitive auction, Debtors selected Appellees' bid for $ 5.2 billion to acquire substantially all of Debtors' assets. Debtors and Appellee's reflected the terms of the winning bid in the APA, which they executed on January 17, 2019. Following a contested hearing that spanned several days, on February 8, 2019, the Bankruptcy Court approved the APA and the sale transaction. The sale closed on February 11, 2019.

**Appellants' Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362(d)**

On December 13, 2019, Appellants moved before the Bankruptcy Court for an order granting relief from the automatic stay under 11 U.S.C. § 362(d) to continue prosecuting their Class Action, but with Appellees substituted as defendants. By their motion, Appellants argued that after the execution of the APA, Appellees were now the real parties in interest in the Class Action because, under § 2.3(e) of the APA, Appellees agreed to assume the currently pending asserted claims against Debtors as liabilities.

Following the parties' motion briefing, on May 14, 2021, the Bankruptcy Court held an evidentiary hearing in which it later issued a bench ruling denying on Appellants' motion. On May 27, 2021, the Bankruptcy Court issued an order denying Appellants' motion and precluding them from joining Appellees as defendants in the Class Action or pursuing any of the Class Action claims against Appellees. On June 9, 2021, Appellants commenced the instant appeal.

## STANDARD OF REVIEW

A district court hearing an appeal from a bankruptcy court reviews the bankruptcy court's findings of fact under the "clearly erroneous" standard, *see* Fed. R. Bankr. P. 8013, while its conclusions of law are reviewed under the *de novo* standard. *See In re Bennett Funding Group,*

3

*Inc.*, 146 F.3d 136, 137 (2d Cir. 1998). Under *de novo* review, the Court affords no deference to the Bankruptcy Court's decision and decides the question as if no decision had been previously rendered.  See *In re Reilly*, 245 B.R. 768, 772 (2d Cir. BAP), *aff'd*, 242 F.3d 367 (2d Cir. 2000) ("A *de novo* review allows us to decide the issue as if no decision had been previously rendered . . .. No deference is given to the Bankruptcy Court's decision.") (*quoting In re Miner*, 229 B.R. 561, 565 (2d Cir. BAP 1999)).

By contrast, review for clear error is much more deferential to the bankruptcy court's findings. Clear error exists "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. United Techs. Corp.*, 610 F.3d 44, 51 (2d Cir. 2010) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). While the lower court's findings of fact are not conclusive on appeal, the party that seeks to overturn them bears a heavy burden. "To be clearly erroneous, a decision must strike [us] as more than just maybe or probably wrong; it must . . . strike [us] as wrong with the force of a five-week-old, unrefrigerated dead fish." *In re Reilly*, 245 B.R. at 772 (quoting *In re Miner*, 229 B.R. at 565). "Particular deference is given to a bankruptcy court's findings on credibility." *In re Portaluppi*, 609 F. App'x 30, 31 (2d Cir. 2015) (citing *In re CBI Holding Co.*, 529 F.3d 432, 450 (2d Cir. 2008)).

## **DISCUSSION**

By their brief, Appellants present only one issue on appeal: whether the Bankruptcy Court erred in interpreting the APA to preclude Appellants from joining Appellees as defendants in the Class Action or pursuing any of the Class Action claims against them. Appellants argue that while it correctly concluded that the APA was unambiguous, the Bankruptcy Court erroneously

interpreted § 2.3(e) of the APA to preclude joining Appellees as defendants in the Class Action or pursuing any of the Class Action claims against them. (Appellant's Br. at 24–29.)

Section 2.3 sets forth the Appellees' "Assumed Liabilities" from Debtors. (*See* APX 154.) Particularly relevant here is § 2.3(e), which provides that

> subject to Section 2.8(e),[1] all Liabilities for warranties and protection agreements or other services contracts (other than warranties relating to Intellectual Property) for the goods and services of Sellers sold or performed prior to the Closing, including any Liabilities owed by Sears Re to any Seller in respect of reinsurance of such warranties and protection agreements (the "PA Liabilities")[.]

(APX 155.)

Appellants argue that the Bankruptcy Court erroneously inserted limiting language not found in § 2.3(e) by first construing "a temporal limitation" based on provision's use of "for," and then by construing the term "Liabilities" to narrowly apply only to "performance obligations" but not the Class Action claims. (*Id.*) Instead, Appellants contend that the language in § 2.3(e) indicates that Appellees expressly assumed liability for the currently pending Class Action claims because

---

[1] Section 2.8(e) provides that

> [n]otwithstanding anything to the contrary contained in this Agreement, Seller shall not transfer the KCD Notes to Buyer, and Buyer shall not assume the PA Liabilities from Seller, unless and until Seller has received the requisite consent of the Bermuda Monetary Authority or any other applicable Bermuda regulatory authority to the transfer of the KCD Notes (the "BMA Consent"). Immediately following receipt of the BMA Consent, the transfer of the KCD Notes and the assumption of the PA Liabilities shall take place simultaneously. From the Closing Date until such time as the transfer of the KCD Notes and the assumption of the PA Liabilities occurs, pursuant to a services agreement to be in a form reasonably agreed to by Sellers and Buyer (the "PA Liabilities Services Agreement"), (i) Buyer shall provide services to the applicable Sellers sufficient to enable Sellers to perform the PA Liabilities and (ii) in consideration for such services, Sellers shall pay to Buyer an amount equal to the aggregate of all amounts paid by Buyer to Sellers with respect to any licenses under which Buyer licenses the KCD IP.

(APX 163.) On its face, this section does not appear relevant for purposes of Appellants' issue on appeal. Nor does either of the parties raise any argument to the contrary.

the provision broadly refers to "all Liabilities" and because the APA's definition of "Liability" includes

> any liability, indebtedness, debt, guaranty, claim, demand, loss, damage, deficiency, assessment, responsibility, Claim, Action, proceeding or obligation of whatever kind or nature (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether due or to become due, whether determined or determinable, whether choate or inchoate, whether secured or unsecured, whether matured or not yet matured) and including all costs, fees and expenses relating thereto.

(APX 136.)

But after due consideration, the Court disagrees with Appellants because their arguments overlook that when interpreting a contract, the Court must do so by considering the contract as a whole and not by reading certain provisions in isolation. *See Markus v. Rozhkov*, 615 B.R. 679, 695 (S.D.N.Y. 2020) ("In reviewing a decision of a bankruptcy court, the district court may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below." (internal quotations and citations omitted)).

On appeal, issues of contract interpretation are reviewed *de novo*. *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 198 (2d Cir. 2003). Under § 13.8(a) of the APA, Delaware law governs interpretation of this agreement. (*See* APX 224–25.) Under Delaware law, the first step is for the Court to determine whether the contract is ambiguous—*i.e.*, whether the provisions in controversy are "fairly susceptible of different interpretations or may have two or more different meanings." *See Salamone v. Gorman*, 106 A.3d 354, 369 (Del. 2014).

"Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party." *Id.* at 367–68. "When interpreting a contract, this Court will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its

provisions." *Id.* at 368. Simply put, if unambiguous, "[c]ontract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Id.*

But when there is ambiguity flowing from contractual language, "the interpreting court must look beyond the language of the contract to ascertain the parties' intentions." *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016) (citations omitted). When construing ambiguous contractual provisions under Delaware law, "courts are permitted to consider the parties' course of dealing" and other extrinsic evidence. *Id.*; *Salamone*, 106 A.3d at 374. Under those circumstances, a bankruptcy court's interpretation of parol evidence is considered to be a finding of fact, and as such is reviewed for clear error. *Oil Trading Assocs., Inc. v. Texas City Ref., Inc.*, 201 F. Supp. 846, 849 (S.D.N.Y. 1962) (holding that interpretation of parol evidence is a question of fact).

To begin, the Court agrees with the Bankruptcy Court and the parties that the language in the APA is unambiguous. Accordingly, the Court "will give effect to the plain-meaning of the contract's terms and provisions," *Osborn ex rel. Osborn v. Kemp,* 991 A.2d 1153, 1159–60 (Del. 2010), with "'priority to the parties' intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions." *Salamone*, 106 A.3d at 368 (citation omitted). On that basis, after construing the APA as a whole and giving effect to all its provisions, the Court agrees with the Bankruptcy Court that the APA's plain and ordinary meaning precludes joining Appellees as defendants in the Class Action or pursuing any of the Class Action claims against them.

To be sure, if § 2.3(e) is read *in isolation*, then Appellants' reading of the APA is not unreasonable because it essentially provides that Appellees would assume "all Liabilities for

7

warranties and protection agreements or other services contracts . . . for the goods and services of [Debtors] sold or performed prior to the Closing," which ostensibly includes Appellants' Class Action claims involving the MPAs. In fact, considering that the APA's definition of "Liability" includes any "Claim" and "Action" regardless of whether it is "known or unknown" or whether it is "asserted or unasserted," then such reading—*without more*—presumably supports Appellants' position. (*See* APX 136.)

But most notably, Appellants' reading of § 2.3(e) completely overlooks the language included in § 2.4(c) and that provision's relationship with § 2.3(e). Nor do Appellants' arguments in their briefing fare any better. Tellingly, despite Appellees explicitly quoting § 2.4(c) and arguing its relationship with § 2.3(e) (*see* Appellees' Br. at 29–31), Appellants' reply brief only contains a single paragraph addressing Appellees' argument in passing. (*See* Appellants' Reply Br. at 6.)

Specifically, section 2.4 sets forth Appellees' "Excluded Liabilities." Most relevant here is § 2.4(c), which provides that

> [n]one of Buyer, any Affiliate of Buyer or any Assignee shall assume, be deemed to assume or become obligated hereunder in any way to pay or perform (whether as a successor to any Seller or otherwise) any Liabilities of any Sellers or any of their respective Affiliates of any kind or nature, known, unknown, contingent or otherwise, whether direct or indirect, matured or unmatured, other than the Assumed Liabilities, (the foregoing including the following, the "Excluded Liabilities") which shall include the following Liabilities:
>
> . . .
>
> all Liabilities arising from or related to any claim, Action, arbitration, audit, hearing, investigation, suit, litigation or other proceeding (whether civil, criminal, administrative, investigative, or informal and whether pending or threatened or having any other status) arising out of the Assumed Liabilities, the Acquired Assets or the operation of the Business prior to the Closing Date or relating to facts, actions, omissions, circumstances or conditions existing, occurring or accruing prior to the Closing Date against any Seller or its Affiliates[.]

(APX 157.)

It logically follows then, that when read together, the plain meaning of §§ 2.3(e) and 2.4(c) indicates in relevant part that while Appellees agreed to assume all liabilities "for warranties and protection agreements or other services contracts . . . for the goods and services of [Debtors] sold or performed prior to the Closing," they did not agree to assume any liabilities "arising from or related to" *any currently pending civil* "claim, Action, . . . suit, litigation or other proceeding" arising out of" such "warranties and protection agreements or other services contracts." And while the APA has a broad definition of "Liability" that may appear to conflict with how §§ 2.3(e) and 2.4(c) use that term, it is a well-established canon of contract interpretation that "where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." *See DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005). In short: sections 2.3(e) and 2.4(c) expressly and unambiguously establish that Appellees did not agree to assume any of Appellants' currently pending civil Class Action claims against Debtors.

This conclusion is further supported by the fact that Appellants' reading of the APA completely goes against Delaware rules of contract construction not only because it considers § 2.3(e) in isolation, but also because it renders § 2.4(c) "mere surplusage." *See Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010) (noting that Delaware law "give[s] each [contract] provision and term effect, so as not to render any part of the contract mere surplusage"). Simply put, if Appellants' reading of § 2.3(e) were correct, then the language in § 2.4(c) would be nothing more than redundant language that is inconsistent with the rest of the APA—a result that seems highly improbable especially because that Debtors and Appellees extensively negotiated the terms of the APA under the supervision of the Bankruptcy Court.

Accordingly, the Court concludes that the Bankruptcy Court did not err in interpreting the APA to preclude Appellants from joining Appellees as defendants in the Class Action or pursuing any of the Class Action claims against them.

## **CONCLUSION**

Based on the foregoing, the decision of the Bankruptcy Court is AFFIRMED. The Clerk of the Court is kindly directed to CLOSE this case.

Dated: September 27, 2022
       White Plains, NY

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge